OPINION
{¶ 1} Appellant, John Iser, III, appeals from the April 5, 2004 judgment entry of the Trumbull County Court of Common Pleas.
 {¶ 2} Appellant was secretly indicted on January 15, 2003, for counts one and three, trafficking in cocaine, fifth degree felonies, in violation of R.C. 2925.03(A)(1) and (C)(4)(a); count two, possession of cocaine, a fifth degree felony, in violation of R.C. 2925.11(A) and (C)(4)(a); and count four, possession of cocaine with forfeitures, a first degree felony, in violation of R.C. 2925.11(A) and (C)(4)(e), and R.C. 2925.42(A)(1)(b).
 {¶ 3} A jury trial commenced on February 2, 2004, at which time the trial court dismissed the two trafficking counts, and renumbered the remaining counts as count one, possession of cocaine, a fifth degree felony, in violation of R.C. 2925.11(A) and (C)(4)(a), and count two, possession of cocaine with forfeitures, a first degree felony, in violation of R.C. 2925.11(A) and (C)(4)(e), and R.C. 2925.42(A)(1)(b). After both sides had rested, and upon motion of the prosecutor, count two was amended to possession of crack cocaine with forfeitures, a first degree felony, in violation of R.C. 2925.11(A) and (C)(4)(e), and R.C.2925.42(A)(1)(b). The jury returned guilty verdicts on both counts.
 {¶ 4} The trial evidence revealed that during 2001, the Warren Police Department received reports of criminal activity at 1436 Ogden, in Warren, Ohio, where appellant was a tenant. Based on a resulting investigation, a search warrant was issued, and on September 4, 2001, several officers raided the residence. While some officers secured the first and second floors, Detectives Melanie Gambill ("Detective Gambill") and Jeff Coleman went to secure the basement, which was laid out so one could see into the area from the stairs. In the front area were two couches, a coffee table, and a chair. Off of the back area was a small fruit cellar. Four adults, including appellant, were found in the basement sitting in the furnished area. The adults were secured and searched, and Detective Gambill recovered a pink pill bottle and a small baggy from appellant, both of which contained what the Ohio Bureau of Criminal Identification and Investigation ("BCI") later confirmed was .25 grams of cocaine and .22 grams of cocaine, respectively. Other items of drug paraphernalia, including a crack pipe, were recovered from the basement and destroyed on site.
 {¶ 5} A twelve-year-old girl was found in an upstairs bedroom containing girl's furnishings.
 {¶ 6} Appellant was not taken into custody or arrested, but was warned to stop criminal activity at the residence or the police would return.
 {¶ 7} On March 22, 2002, several officers again raided the residence. When Detectives David Weber ("Detective Weber") and Gambill entered the basement, the view was obstructed by sheets hung at various locations. Halfway down the steps, Detective Weber pulled down the first sheet so he could see into the basement. He observed a female standing by the couch, and saw someone run toward the back of the basement. Another sheet concealed the back area. Detective Weber pulled down this sheet as he slowly moved toward the entry door to the fruit cellar. He observed appellant crouched down hiding below a window in the fruit cellar. From the time Detective Weber saw appellant fleeing to the time he entered the fruit cellar, approximately forty-five seconds to one minute had passed. Detective Weber ordered appellant out of the fruit cellar and recovered U.S. currency on him.
 {¶ 8} After the home's occupants were secured, a K-9 dog was retrieved to sniff the residence. In the basement, the K-9 "alerted high," which meant that the odor he was tracking was high up. The K-9 tracked the odor into the fruit cellar, where he began jumping at a high portion of a wall. On the top of the wall above the window at the floor joists, two baggies were found, which BCI later confirmed contained at total of 37.90 grams of crack cocaine. Detective Gambill valued the crack cocaine at approximately $1,500.
 {¶ 9} Besides appellant and the female in the basement, another female and a male were found in the residence. Cash and cocaine were recovered from the male's pockets. Upon searching the upstairs, Detective Dewey Gray ("Detective Gray") recovered miscellaneous items employed when using crack cocaine — including a crack pipe, crack scales, lighters, and bongs — from a bedroom containing a man's furnishings. Detective Gray gave his opinion that whoever was staying in that bedroom had a drug abuse problem.
 {¶ 10} A sentencing hearing was held on March 11, 2004. In a judgment entry dated April 5, 2004, the trial court sentenced appellant to eleven months on count one and to the mandatory three-year prison term on count two, with the sentences to be served consecutively. Appellant was ordered to pay a mandatory $10,000 fine, and his driver's license was suspended for six months. It is from that judgment that appellant filed a timely notice of appeal and makes the following assignments of error:
 {¶ 11} "[1.] The trial court erred by sentencing appellant to serve consecutive, rather than concurrent, sentences.
 {¶ 12} "[2.] The trial court erred by failing to sentence appellant to the shortest prison term available.
 {¶ 13} "[3.] [Appellant's] conviction for count two is against the manifest weight of the evidence."
 {¶ 14} In his first assignment of error, appellant argues that consecutive sentences were not proper because the record did not show clear and convincing evidence supporting consecutive sentences. He states that the trial court gave no reasons for imposing such sentences, nor did the court state that the sentences were necessary to protect the public from future crime. Furthermore, he claims that Blakely v. Washington
(2004), 542 U.S. 296, prohibits a trial court from relying on facts, in enhancing a defendant's sentence, that were neither found to be true by a jury nor admitted by the defendant.
 {¶ 15} An appellate court reviews a felony sentence de novo. State v.Stambolia, 11th Dist. No. 2003-T-0053, 2004-Ohio-6945, at ¶ 30. An appellate court may conduct a "meaningful review" of a trial court's sentencing decision. State v. Comer (2003), 99 Ohio St.3d 463,2003-Ohio-4165, at ¶ 10. "Meaningful review" means that the appellate court may modify or vacate a sentence if it finds "clearly and convincingly" that the record does not support the sentence or the sentence is contrary to law. Id; R.C. 2953.08. Clear and convincing evidence is evidence that will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.State v. Prodonovich, 11th Dist. No. 2002-L-116, 2005-Ohio-3090, at ¶ 50, citing State v. Thomas (July 16, 1999), 11th Dist. No. 98-L-074, 1999 Ohio App. LEXIS 3334.
 {¶ 16} R.C. 2929.14(E)(4) sets out three statutory factors a trial court must find to impose consecutive prison terms for convictions of multiple offenses. First, the trial court must find that consecutive sentences are necessary to protect the public from future crime or to punish the offender. Second, the court must find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. Third, the court must also determine that one of the factors listed in R.C.2929.14(E)(4)(a)-(c) exists: (a) the offender committed the multiple offenses while awaiting trial or sentencing or was under community control sanction, (b) the harm caused by the offenses was so great or unusual that a single prison term would not adequately reflect the seriousness of the offender's conduct, or (c) the offender's history of criminal conduct proves that consecutive sentences are needed to protect the public from future crime by the offender. Comer at ¶ 10. See, also,State v. Norwood (June 8, 2001), 11th Dist. No. 2000-L-072, 2001 Ohio App. LEXIS 2573, at 11-12.
 {¶ 17} In addition to stating its findings under R.C. 2929.14(E), the trial court must include its reasons for selecting consecutive sentences. R.C. 2929.19(B)(2)(c). The findings and reasons must be made orally at the sentencing hearing, with each rationale aligned with the specific finding to support its decision. Comer at ¶ 14-20.
 {¶ 18} At appellant's sentencing hearing, the trial court imposed the statutory minimum term of three years for count two, possession of crack cocaine, and eleven months for count one, possession of cocaine, to run consecutively. Thereafter, the court did not state findings or reasons for imposing the consecutive sentences until the prosecutor asked, "I would assume that the reason for the consecutive sentence is that the harm that was caused was so great or unusual, that a single term would not adequately reflect the seriousness of the conduct and that would be based upon the fact that there was a [12] year old girl in the house at the time." The court replied, "[t]hat is exactly what the [c]ourt must say and I do say."
 {¶ 19} The trial court thereafter set forth in the April 5, 2004 judgment entry facts constituting its reasons for selecting consecutive sentences, as well as the enumerated findings required by R.C.2929.14(E)(4). This subsequent entry, however, does not satisfy theComer requirement that the reasons and findings be made orally at the sentencing hearing, with each reason aligned with the specific finding. Appellee conceded in its appellate brief and at oral argument that the trial court failed to meet this Comer requirement.
 {¶ 20} Since the trial court did not make the required statutory findings prior to sentencing appellant to consecutive prison terms, appellant's first assignment of error has merit and the portion of the trial court's judgment imposing consecutive sentences will be vacated and remanded to the trial court for resentencing.
 {¶ 21} We reject, however, appellant's argument that Blakely prohibits a trial court from imposing consecutive sentences if its reasons for doing so are based on facts that were neither found to be true by a jury nor admitted by the defendant. This court has consistently held that a trial court's imposition of consecutive sentences does not violateBlakely, which deals with the issue of sentencing for a single crime. See, e.g., State v. Semala, 11th Dist. No. 2003-L-128, 2005-Ohio-2653;State v. Morales, 11th Dist. No. 2003-L-025, 2004-Ohio-7239.
 {¶ 22} In his second assignment of error, appellant contends that the trial court's finding that the shortest prison term for count one, possession of cocaine, would demean the seriousness of the offender's conduct and not adequately protect the public from future crime by the offender or others, is not supported by the evidence or by any jury findings.
 {¶ 23} Appellant was found guilty of violating R.C. 2925.11(A) and (C)(4)(a). R.C. 2925.11(A) provides that: "[n]o person shall knowingly obtain, possess, or use a controlled substance." R.C. 2925.11(C)(4)(a) provides that except in cases where the amount possessed exceeds a certain amount, which is not applicable in this case, a violation of R.C.2925.11(A) is a fifth degree felony, and R.C. 2929.13(B) applies in determining whether to impose a prison term.
 {¶ 24} R.C. 2929.13(B)(1) requires the court to determine if any of the factors in that section are applicable. R.C. 2929.13(B)(2)(a) provides that if no factors are applicable, then the court will impose a community control sanction or combination of community control sanctions upon the offender if, after considering the seriousness and recidivism factors in R.C. 2929.12, it determines that such sanctions are consistent with the purposes of felony sentencing in R.C. 2929.11 (to protect the public from future crime by the offender and others, and to punish the offender). If the court decides that community control sanctions are not consistent with the purposes of felony sentencing, it may provide any sanction or combination of sanctions provided in R.C. 2929.14 to R.C.2929.18. See R.C. 2929.13(A).
 {¶ 25} The permissible prison terms for a fifth degree felony are six to twelve months. R.C. 2929.14(A)(5). R.C. 2929.14(B) provides, in pertinent part, that when a court elects to impose a prison term, it must impose the shortest prison term for the offense unless either (1) the offender was serving prison at the time of the offense or previously served a prison term, or (2) the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crimes by the offender or others.
 {¶ 26} The findings and reasons for the length of the sentence must be given orally at the sentencing hearing. Comer at ¶ 26.
 {¶ 27} In appellant's case, none of the factors in R.C. 2929.13(B)(1) are applicable. At the sentencing hearing, it was evident that the trial court considered the R.C. 2929.12 seriousness and recidivism factors when it stated, "[t]he thing that worries me the most here is the fact that you have indeed not shown any remorse." See R.C. 2929.12(D)(5).
 {¶ 28} The trial court also addressed the purposes of felony sentencing when it stated: "[t]he Court finds that [the] presumption against sending the offender to prison for Count One is rebutted based upon the fact that a prison term is consistent with the purposes and principles of sentencing. And that [appellant] is not amenable to any available community control sanction. And the Court agrees with the Prosecution that [appellant] has not shown any genuine remorse, and tried to cover that."
 {¶ 29} As to the R.C. 2929.14(B) requirement, the trial court admitted that appellant had not previously served a prison sentence,[1] but further stated, "[t]he Court is also convinced, sadly, [appellant], that you are very likely to commit future crime. * * * Therefore, I think it would demean the seriousness of the offense not to impose a period of time of incarceration on Count One, and that is consistent with the whole outline of the sentencing guidelines. Otherwise, it would demean the seriousness of your conduct and not adequately protect the public in the future."
 {¶ 30} There is sufficient evidence supporting the trial court's reasons for its findings. Appellant's lack of remorse was supported by the probation officer's opinion to that effect. Appellant's likelihood to commit future crime was shown by evidence that although appellant was warned at the first raid to cease his drug activity, he not only continued such activity, but took steps to conceal it by hanging sheets in the area of drug activity. Detective Gray testified at trial that the person who occupied the man's room in the residence had a drug problem. Detective Weber testified at the sentencing hearing that he observed a high volume of foot traffic and vehicular traffic at appellant's residence.
 {¶ 31} Thus, the trial court provided the required findings and reasons for a longer prison term, and the record supports these findings and reasons.
 {¶ 32} In addition, appellant alleges that the court's findings were not supported by any jury findings. He cites Blakely as support for this argument.
 {¶ 33} This court has already determined that the holding in Blakely
does not apply to the R.C. 2929.14(B) procedures, which allows a trial court to sentence a defendant to a term longer than the statutory minimum.
 {¶ 34} In Morales, supra, we began our analysis by noting thatBlakely and the prior case law of the United States Supreme Court had not had the effect of depriving a trial judge of the discretion to consider aggravating circumstances in deciding the length of a defendant's sentence; instead, the Blakely decision only held that a trial judge cannot make a factual finding which would result in the imposition of a sentence longer than the maximum prison term permissible under the jury verdict. In other words, we concluded that, under Blakely, the Sixth Amendment right to a jury trial had no application so long as the trial judge was imposing a sentence within the general range of terms permissible based upon the jury verdict. The Morales court then held that the factors set forth in R.C. 2929.14(B) were similar in nature to aggravating circumstances because a trial court's finding concerning the existence of one of the two factors in a particular case only meant that a longer term within the acceptable range could be imposed. As a result, the Morales court ultimately held that the procedure under R.C. 2929.14(B) did not constitute a violation of the basic constitutional right to a jury trial. See, also, State v. Fiedler, 11th Dist. No. 2003-L-190, 2005-Ohio-3388, at ¶ 44-47 (following Morales).
 {¶ 35} The United States Supreme Court's recent opinion in UnitedStates v. Booker (2005), 125 S.Ct. 738, supports our Morales decision. InBooker, the Court reviewed the constitutionality of the Federal Sentencing Guidelines. The factual scenarios in Booker were similar to the facts in Blakely; i.e., both cases involved situations in which the trial court made a factual finding which allowed for the imposition of a prison term that was not within the range of possible sentences based solely upon the jury verdict. Thus, the procedure allowing this was found to be unconstitutional. Since the Ohio procedure under R.C. 2929.14(B) and other pertinent statutes do not allow the trial court to impose a sentence above the statutory range for the offense in question, it is easily distinguished from the Blakely and Booker cases.
 {¶ 36} More importantly, the Booker majority opinion as to the validity of the sentencing guidelines contains specific language that supports our interpretation of Blakely:
 {¶ 37} "If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range. * * * Indeed, everyone agrees that the constitutional issues presented by these cases would have been avoided entirely if Congress had omitted from the [Sentencing Reform Act] the provisions that make the Guidelines binding on district judges * * *. For when a trial judge exercises his discretion to select a specified sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." Booker at 750. (Citations omitted.)
 {¶ 38} Once a trial court makes findings under R.C. 2929.14(B), it then has the statutory authority to impose sentences longer than the statutory minimum. Fiedler at ¶ 48. However, the findings do not give the trial court unlimited discretion to impose a prison term of any possible length for each offense; instead, the trial court's discretion is confined to the range of sentences which can be imposed for that offense. Id.
 {¶ 39} Pursuant to this analysis, appellant's Blakely argument lacks validity. The trial court's sentence was within the defined range for a fifth degree felony. Thus, appellant has no right to a jury determination of the facts supporting the judge's decision. Hence, appellant's second assignment of error is overruled.
 {¶ 40} In his third assignment of error, appellant alleges that his conviction on count two, possession of crack cocaine, is against the manifest weight of the evidence, as there is no direct evidence that the crack cocaine found in his basement belonged to him.
 {¶ 41} As this court stated in State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at 13-15:
 {¶ 42} "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented.
 {¶ 43} "* * *
 {¶ 44} "* * * `manifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.
 {¶ 45} "In determining whether the verdict was against the manifest weight of the evidence, `(* * *) the court reviewing the entire record,weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)' (Citations omitted.) * * *" (Emphasis sic.)
 {¶ 46} A judgment of a trial court should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." State v.Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 47} In the current case, appellant was convicted of possession of crack cocaine, in violation of R.C. 2925.11(A), which states that "[n]o person shall knowingly obtain, possess, or use a controlled substance." "Possess" is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K).
 {¶ 48} Possession of a controlled substance may be actual or constructive. State v. Lee, 11th Dist. No. 2002-T-0168, 2004-Ohio-6954, at ¶ 41, citing State v. Thomas (1995), 107 Ohio App.3d 239. Constructive possession of a controlled substance exists when an individual exercises dominion and control over it, even though it may not be within his immediate physical possession. Lee at ¶ 41, citing Statev. Wolery (1976), 46 Ohio St.2d 316, 329. Circumstantial evidence can be used to support a finding of constructive possession. State v. Scarl,
11th Dist. No. 2003-P-0125, 2004-Ohio-7227, at ¶ 74. Evidence of flight is also admissible as tending to show consciousness of guilt. State v.Brown, 8th Dist. No. 83976, 2004-Ohio-5863, at ¶ 25.
 {¶ 49} In the case at bar, there was ample evidence upon which the jury could reasonably conclude that appellant knowingly possessed the crack cocaine found at his residence.
 {¶ 50} Trial testimony demonstrated that appellant had been engaging in illegal cocaine activity. Detective Weber testified that during the first raid of appellant's residence, resulting from reports of criminal activity there, cocaine was recovered from appellant's person and drug paraphernalia was found in his basement, where he and three other adults were found in a furnished area. According to Detectives Gambill and Gray, not only did they recover crack cocaine during the second raid, but they also recovered an array of drug paraphernalia in what appeared to be appellant's bedroom.
 {¶ 51} There was also circumstantial evidence that appellant planned for the possibility of getting caught with drugs again. Detective Weber testified that in executing a search warrant, the procedure is to "knock and announce," then wait ten to fifteen seconds before ramming the door. As with the first raid, the officers had to ram the door during the second raid to enter. On this occasion when Detective Weber entered appellant's basement, he observed the hanging sheets, which obstructed the room's view. When he pulled down the first sheet and entered the basement, he observed appellant run into a concealed back area. Moving slowly with a flashlight toward the darkened back area, it took him close to a minute to locate appellant.
 {¶ 52} The jury could infer from appellant's flight that he was in possession of the crack cocaine when the raid commenced, and ran to hide it in the floor joists. Detective Weber's delay in getting to him gave him time to do so. Although the cocaine was no longer in his immediate possession, the jury could infer that he had constructive possession of it. He was in the same location that the drugs were recovered, "crouched down hiding" in the fruit cellar below the floor joists where two bags containing $1,500 worth of cocaine were found. Money was found in appellant's pockets.
 {¶ 53} After reviewing the record and weighing all of the evidence and reasonable inferences, we cannot conclude that the jury lost its way in finding appellant guilty of possession of crack cocaine. Therefore, appellant's third assignment of error is overruled.
 {¶ 54} For the foregoing reasons, appellant's first assignment of error has merit. Appellant's second and third assignments of error are not well-taken. The judgment of the Trumbull County Court of Common Pleas is affirmed in part, reversed in part, and remanded to the trial court for resentencing.
Colleen Mary O'Toole, J., concurs.
William M. O'Neill, J., dissents with Dissenting Opinion.
[1] Appellant also argues, in support of the shortest prison term, that he is a first-time felony offender. However, the statutory issue under R.C. 2929.14(B) is not whether he was previously convicted of a felony but rather whether he previously served a prison term.